UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLEN PAYNE, : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. |
| : | 3:13-cv-00355(VLB) |
| : | |
| PSC INDUSTRIAL OUTSOURCING, : | |
| LIMITED PARTNERSHIP, : | December 30, 2013 |
|     Defendant. : | |

**MEMORANDUM OF DECISION DENYING
DEFENDANT'S MOTION TO DISMISS [Dkt. #19]**

The plaintiff, Allen Payne ("Payne"), brings this action against PSC Industrial Outsourcing, Limited Partnership ("PSC") for disability discrimination in violation of Conn. Gen. Stat. § 46a-60(a)(1), violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and retaliation in violation of Conn. Gen. § 46a-60(a)(4), for actions taken in relation to his termination following disclosure of a cardiac condition.  Currently pending before the Court is the defendant's motion to dismiss the retaliation claim for failure to state a claim upon which relief may be granted pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

For the following reasons, the defendant's motion to dismiss is DENIED.

**Factual Background**

The following facts are taken from the Amended Complaint.  [Dkt. #20, Amended Complaint].  Payne began working for PSC around January 21, 2002 as

1

a Technician/Laborer in Bridgeport, Connecticut. [*Id.* at ¶ 12]. While performing this role, Payne received satisfactory performance evaluations and was promoted in 2004 to the position of Coordinating Supervisor. [*Id.* at ¶¶ 13, 14]. During his time as a Coordinating Supervisor, the plaintiff received satisfactory performance evaluations. [*Id.* at ¶ 15].

Around late 2007, the plaintiff was diagnosed with testicular cancer and took a one-year leave of absence to pursue medical treatment. [*Id.* at ¶ 16]. While receiving treatment, Payne developed a cardiac condition which caused him to suffer a heart attack. [*Id.* at ¶ 17]. On August 17, 2009, he returned to PSC with medical documentation permitting him to recommence his job; he also informed his employer at that time of his cardiac condition. [*Id.* at ¶ 18]. When he returned, the defendant informed the plaintiff that the position he held prior to his leave was being eliminated, and he was being placed back into the "field" as a Foreman, but his pay rate would remain the same as when he was a Coordinating Supervisor. [*Id.* at ¶ 19].

Approximately one month later, the plaintiff was transferred to a new job site in New Haven, Connecticut to help him obtain overtime work which the defendant promised him previously. [*Id.* at ¶¶ 20-21]. At this new position, the plaintiff still maintained the same title and salary, but he was required to perform manual labor at the construction site. [*Id.* at ¶ 22]. While in New Haven, the plaintiff learned that the defendant had appointed Mike Sanchez as the Coordinating Supervisor at the Bridgeport location; the position that the defendant told the plaintiff it had eliminated. [*Id.* at ¶ 23]. After the New Haven

job site was finished, the plaintiff returned to Bridgeport and was assigned to the scaffolding team, reporting directly to Travis Button, the scaffolding team leader, who in turn reported to Rich Woodhall, the location manager. [*Id.* at ¶¶ 26, 27]. The primary responsibilities of the scaffolding team included assembling and disassembling scaffolding used at the site. [*Id.*]. Realizing that this position required intense physical labor, the plaintiff informed his supervisors of his cardiac condition. [*Id.* at ¶ 27].

In addition to his work assembling and disassembling scaffolding, the plaintiff shared work responsibilities with Button, in that when Button was on vacation or otherwise detained, the plaintiff assumed Button's supervisory and managerial roles. [*Id.* at ¶ 30]. From the time the plaintiff returned to Bridgeport, he and other employees on the scaffolding team were permitted to use ropes and pulleys to move scaffolding parts on the job site, rather than carrying the scaffolding pieces up numerous flights of stairs. [*Id.* at ¶ 31]. In May 2011, while the plaintiff and Button were discussing their shared responsibilities, Button told the plaintiff that there were certain tasks that Button would perform himself because he had a "ghost person" on certain documents related to work being performed in Bridgeport. [*Id.* at ¶ 35]. Upon reviewing the papers, the plaintiff discovered that this meant that Button's brother was listed as working at the site, even though his brother never performed any job related tasks there. [*Id.* at ¶¶ 36-38]. After learning this, Payne confronted Button stating that he was not comfortable with this information, to which Button responded that if he got involved, Payne would "not be working." [*Id.* at ¶¶ 38-39].

Following the incident, Button commenced a pattern of harassing and abusive behavior directed towards the plaintiff, including making harassing, derogatory, and offensive remarks regarding the plaintiff's physical disability and continuously threatening to have the plaintiff's employment terminated. [*Id.* at ¶ 40]. In addition, Button directed that the scaffolding tasks that were previously accomplished with the use of ropes and pulleys were now to be performed by carrying the scaffolding pieces up and down numerous flights of stairs. [*Id.* at ¶ 41]. On several occasions, Button specifically ordered the plaintiff to perform tasks that involved climbing numerous steps, and, on those occasions, the plaintiff would remind Button that he could not perform such tasks due to his cardiac condition. [*Id.* at ¶¶ 41-43]. In response, Button would tell Payne that if he could not perform his job, he would need to "go home." [*Id.*]. Payne informed the location manager, Woodhall, of Button's behavior on several occasions, but nothing was done to stop or otherwise address Button's actions. [*Id.* at ¶ 45].

Around July 26, 2011, Payne was working a ten-hour shift and, at approximately 3:00 pm, Button told him to perform a task that required him to climb nine flights of stairs. [*Id.* at ¶ 46]. The plaintiff again protested the assignment due to his cardiac condition, but Button reiterated his stance that if the plaintiff could not perform the task, he would need to go home. [*Id.* at ¶ 47]. This time, the plaintiff told Button to stop his harassing and abusive behavior, to which Button directed him to report to his office to be officially reprimanded for insubordination. [*Id.* at ¶¶ 48-49]. While in Button's office, the plaintiff would not sign the reprimand form, and then proceeded to call and leave a voicemail for

4

Woodhall regarding the situation. [*Id.* at ¶ 50]. Button overheard Payne's voicemail and became irate and yelled and cursed at the plaintiff in a threatening and hostile manner, at which time the plaintiff left the site. [*Id.* at ¶ 51]. The following day, the plaintiff met with Woodhall, Sanchez, and Button, and was again requested to sign the reprimand form, but he refused claiming that the allegations contained in the report were false. [*Id.* at ¶ 53]. Following this refusal, Woodhall indicated to the parties present that he planned on letting the area manager, Chris Egger, handle the situation. [*Id.* at ¶ 54].

On August 2, 2011, the plaintiff met with Egger and Woodhall, and the plaintiff attempted to explain the situation with Button to Egger and show him the documentation he had to prove his allegations regarding Button's fraudulent behavior. [*Id.* at ¶ 55]. Egger refused to discuss the matter with the plaintiff, and then informed the plaintiff that he was being terminated for a failure to "get along with Button or Woodhall." [*Id.* at ¶¶ 56-57].

The plaintiff filed an Amended Complaint in response to the defendant's motion to dismiss, alleging violations of the Connecticut Fair Employment Practices Act ("CFEPA"), on the basis of both disability discrimination and retaliation, and violations of the ADA. The defendant has admitted that the only issue remaining subsequent to the duly filed Amended Complaint is the claim for retaliation under CFEPA. [Dkt. #22, Reply Memorandum of Law in Support of Motion to Dismiss, p. 2].

**Legal Standard**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an

6

entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Analysis

I. Retaliation under CFEPA

The defendant makes two arguments on its motion to dismiss: (1) the plaintiff has not exhausted his administrative remedies as required under CFEPA before filing in federal court and (2) the plaintiff was not engaged in "protected activity" under the statute, and, therefore, cannot bring a claim for retaliation. We will examine both of these issues in turn.

a. Exhaustion Requirement

The defendant alleges that the plaintiff failed to exhaust administrative remedies as required under CFEPA because the plaintiff did not check the

7

appropriate box on the administrative form for a retaliation claim.  [Dkt. #19-1, Memorandum of Law in Support of Motion to Dismiss, p. 9].  The plaintiff responds by arguing that the selection of the box on the cover page is not dispositive of the claims presented because courts generally construe claims to administrative panels broadly and look to the quality of the allegations throughout the application in determining the actual claims presented.  [Dkt. #21, Plaintiff's Memorandum of law in Opposition to Defendant's Motion to Dismiss, p. 11-12].

It is clearly established that before a plaintiff can file a claim for CFEPA retaliation in district court, the plaintiff must "timely file[] with the Commission on Human Rights and Opportunities" ("CHRO") a petition and either receive a ruling on those claims or a release by the commission of its jurisdiction.  Conn Gen. Stat. §§ 46a-100, 46a-101.  Furthermore, a plaintiff may normally only include in a complaint to a district court the claims that were previously included in the administrative proceeding.  *See Holtz. V. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001).

However, when analyzing administrative claims "it is the charge and not its label that controls."  *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y. 1998).  Indeed, the Second Circuit has recognized three instances in which claims presented to the district court may be "reasonably related" to the administrative charges such that the court may exercise jurisdiction over the claims even though they were not specifically presented to the administrative body.  *See Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397,

1402-03 (2d Cir. 1993).  "A district court claim is 'reasonably related' to an EEOC or CHRO charge if: (1) 'the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge of discrimination,' (2) the claim alleges 'retaliation by an employer against an employee for filing an [administrative] charge,' or (3) the claim alleges 'further incidents of discrimination carried out in precisely the same manner alleged in the [administrative charge.]'"  *Lyddy v. Bridgeport Bd. of Educ.*, 3:06-cv-1420(CFD), 2010 WL 4736270, at *4 (D. Conn. Nov. 15, 2010) (quoting *Butts.*, 990 F.2d at 1402-03).

In *Lyddy*, the court was required to decide whether an application to the CHRO sufficiently alleged that the plaintiffs had filed claims for sexual harassment under Title VII so that the claims were "reasonably related" to the CHRO complaint and therefore exhausted.  In deciding this issue, the court examined the entirety of the application to the CHRO.  *Id.* at *3.  While it considered what boxes the plaintiffs checked on their applications to the CHRO, it did not cease its inquiry there, instead the court examined the specific allegations within the application as well.  *Id.* at *4-5.  Indeed, the defendants have not cited, nor has this Court found, one authority providing that the inquiry as to whether a plaintiff has administratively exhausted its claims is conclusively decided by examining the cover sheet on the application requesting administrative review.  On the contrary, all of the authorities provide for a thorough examination of the administrative claims to see if they can be construed as reasonably related to the claims alleged in the complaint filed with the court.

*See Chouhan v. Univ. of Conn. Health Ctr.*, CV096002439S, 2013 WL 6335273, at *3 (Conn. Super. Ct. Nov. 5, 2013) ("the fact that the plaintiff failed to include an explicit allegation of retaliation in his previous complaint with the CHRO is excusable because the agency had adequate notice to investigate the underlying discriminatory acts at issue.  The fact that the plaintiff now characterizes the demotion as retaliatory is of no moment – the factual predicate remains the same."); *Resnick v. United Pub. Sery. Employees Union*, MMXCV136009166S, 2013 WL 6038364, at *5-6 (Conn. Super. Ct. Oct. 23, 2013) (looking to the entirety of the allegations in the complaint to determine if a petition before the CHRO for violations of General Statutes §§ 46a-60(a)(1) and 46a-60(a)(4) were sufficiently "reasonably related" to withstand a motion to dismiss a § 46a-60(a)(5) claim brought only before the superior court); *Orkney v. Connecticut Tech. Sch. Sys.*, CV075002649, 2011 WL 1031950, at *2 (Conn. Super. Ct. Feb. 22, 2011) (reviewing all the charges in the CHRO complaint in determining that the plaintiff did not sufficiently allege facts related to a hostile work environment to bring that claim in federal court); *see also Soares v. Univ. Of New Haven*, 175 F. Supp. 2d 326, 331 (D. Conn. 2001) (discussing the first exhaustion exception, falling within the scope of the investigation, as allowing claims which would have been described in the charges of the CHRO complaint).

Given the "reasonably related" doctrine in this circuit, it is clear that the only exception that could apply in this case is the first because the second and third relate to retaliatory actions that arise after the CHRO claim is filed.  Here, the plaintiff alleges a claim for retaliation based on his actions occurring before he

filed the CHRO complaint.  So, the Court must look at the CHRO complaint in its totality to determine if the factual predicate is sufficient such that "the conduct complained of would fall within the scope of the [CHRO's investigation]." *Lyddy*, 2010 WL 4736270, at *4.  The retaliation claim is that the plaintiff was terminated because of his opposition to Button's continued denial of providing reasonable accommodations for the plaintiff's cardiac condition, and the allegations in the CHRO complaint are nearly identical to those presented in the plaintiff's Amended Complaint.  The plaintiff alleged the following in the CHRO complaint:

> 15. I then called my Supervisor, and again told him about my medical concerns and my disability in performing the walk up the stairs.  The Supervisor then stated "If you can not perform, [sic] the job, go home.
>
> 16. After this incident, I asked Mr. Button to please stop harassing me.  He informed me that after speaking with Location Manager Mr. Rich Woodhall, he was writing me up for Insuboration [sic].  I asked him how I could be written up for a physical health issue.
>
> 17. Upon information and belief, I contacted Location Manager, Mr. Woodhall, on the telephone but he did not answer my call.  I left him a detailed voicemail message making him aware of my side of the situation and that I was being harassed.  At this same time, Mr. Button heard the message I left for Mr. Woodhall and became irate and screamed at me in a threatening manner.
>
> 18. Upon information and belief, I made Mr. Woodhall aware of the harassment, numerous times, however he never followed up with me.  Actionably, my complaints were never investigated.
>
> 19. On or about July 21, 2011, I met with Supervisor, Mike Sanchez., [sic] Rich Woodhall and Mr. Button.  ON [sic] that day, I was again given my write up for insubordination and told to sign it.

> 20. Upon information and belief, I refused to sign the write-up [sic], as I believe it was a completely bogus write-up.
>
> 21. Additionally, at that meeting, Mr. Woodhall informed me that he would let his boss, Mr. Chris Edger, handle this situation on Monday, July 25th. . . .
>
> 22. The meeting was moved to Tuesday, the 26th. ON [sic] that day, I was terminated by Mr. Edger. I attempted to explain to Mr. Edger that I was being harassed, but he was dis-interested [sic] in anything I had to say. He informed me that I was being terminated based on the fact that they said "I could not get along with the Supervisor or Management."

[Dkt. #19-2, CHRO Complaint, p. 3]. It is clear from these allegations that the plaintiff's retaliation claim, if viable, is based on the same factual circumstance presented to the CHRO for the plaintiff's disability discrimination claims. Therefore, because all of the claims arose from the same factual circumstance, they were properly in the "scope of the investigation" by the CHRO and were "reasonably related" to have been sufficiently exhausted.

Even though the reasonably related doctrine seems to be applied most often in the context of subsequent retaliatory actions taken against the employee for filing an administrative grievance, it has never been explicitly limited to that circumstance. Indeed, as the Fifth Circuit made clear with regard to administrative exhaustion, even an unschooled plaintiff "should not be boxed out" by the mere "failure to place a check mark in the correct box." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970).

Therefore because the plaintiff's allegations were sufficient to put the CHRO on notice of possible violations of section 46a-60(a)(4), we cannot hold that

the plaintiff's failure to check the relevant box alone suffices to render the claim unexhausted.

### b. Protected Activity

The defendant's only other argument in its motion to dismiss the plaintiff's retaliation claim is that the plaintiff failed to allege sufficiently that he "opposed a discriminatory employment practice."  [Dkt. #22, p. 2-5].

Section 46a-60(a)(4) provides that it shall be unlawful

> [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84.

Conn Gen. Stat. § 46a-60(a)(4).  It is uncontested that since the plaintiff was terminated before any administrative proceedings began, his only claim for retaliation must be because he "opposed" a "discriminatory employment practice."

"Connecticut courts generally analyze ADA and CFEPA claims under the same standard."  *Willoughby v. Conn. Container Corp.*, 11-cv-00992(CSH), 2013 WL 6198210, at *16 (D. Conn. Nov. 27, 2013) (citations and internal quotation marks omitted).  Accordingly, the Connecticut Supreme Court has noted that Connecticut state courts will "look to federal law for guidance on interpreting state employment discrimination law," as "the analysis is the same under both."  *Craine v. Trinity College*, 259 Conn. 625, 637 n.6 (Conn. 2002); *see also Webster v. Pomperaug Reg'l Sch. Dist.*, 3:04-cv-1265(DJS), 2007 WL 987539, at *17 (D. Conn.

Mar. 30, 2007) ("Retaliation claims brought pursuant to the CFEPA are analyzed in the same manner as Title VII retaliation claims.").

Retaliation claims are evaluated under a burden-shifting analysis, and for a *prima facie* case, the plaintiff must show, "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). The defendants only argue that the first element was not met because the plaintiff did not sufficiently engage in protected activity by "complaining to Button on those occasions when he was not provided the accommodations." [Dkt. #22, p. 3].

"Under Connecticut law, a person who has opposed any discriminatory employment practice . . . has participated in a protected activity." *Obinabo v. Radio Shack Corp.*, 3:09-cv-1772(MRK), 2012 WL 1565113, at *6 (D. Conn. 2012). "In addition to protecting the filing of formal charges of discrimination . . . [the] opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management . . . ." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *see also Hoydic v. Genesco, Inc.*, AANCV075003291S, 2008 WL 1914338, at *5 (Conn. Super. Ct. Apr. 10, 2008) (construing the same for Conn. Gen. Stat. § 46a-60(a)(4)).

In *Palmieri v. City of Hartford*, the court denied a motion for summary judgment on a retaliation claim under the ADA when an employee engaged in the protected activity of asking for an accommodation for a "back condition" which

14

was refused and resulted in the employee's termination.  *Palmieri v. City of Hartford*, 3:11-cv-1149(JCH), 2013 WL 2398365, at *17 (D. Conn. May 31, 2013). The court then held, without more, that because the "ADA and CFEPA claims are generally analyzed together, the court also denies the Motion for Summary Judgment as to the CFEPA Retaliation claim for the reasons stated" in the section discussing ADA retaliation.  *Id.*  Indeed, it is settled law in this circuit that "[r]equesting a reasonable accommodation is a protected activity."  *Brady v. Dammer*, 573 F. Supp.2d 712, 721 (N.D.N.Y. 2008); *see also Weixel v. Bd. of Educ. Of City of New York*, 287 F.3d 138, 148-49 (2d Cir. 2002) ("First, plaintiffs do allege that they were seeking reasonable accommodation of Rose's disability – which constitutes protected activity under section 504/ADA").

Similarly, another court denied a motion to dismiss a retaliation claim under the ADA when the allegations included a confrontational conversation between the plaintiff and an employee of the defendant hospital.  The defendant told the plaintiff to perform a certain task, but the plaintiff "questioned" the decision by stating that his arthritis prevented him from performing what was asked of him.  *Smith v. St. Luke's Roosevelt Hosp.*, 08-civ-4710(GBD/AJP), 2009 WL 2447754, at *21 (S.D.N.Y. Aug. 11, 2009) *report and recommendation adopted*, 08-cv-4710 (GBD), 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009).  The defendant responded that the plaintiff's arthritic condition no longer existed because the doctor's note was too old; in response, the plaintiff further contested by saying that arthritis "does not go away."  *Id.*  The court found that viewing this conversation "in the light most favorable to [the plaintiff], [the plaintiff] was

15

requesting a reasonable accommodation for his arthritis," and thus was engaged in protected activity. *Id.*

Just as in that case, Payne objected to Button's harassing behavior of making him perform manual tasks which were potentially harmful to his cardiac condition. When he voiced his objection to these assignments, Button attempted to reprimand him for insubordination, but Payne opposed the reprimand and refused to sign the form. Even after the plaintiff discussed the issue with Button's superiors, Payne continued to oppose management's decision to reprimand him for objecting to Button's refusal to accommodate his condition. Ultimately, Payne's refusal to submit to a written reprimand resulted in his termination. His request for accommodation and opposition when that request was denied are protected activities under this circuit's jurisprudence.

The defendant argues that while requesting a reasonable accommodation is protected activity under the ADA, Connecticut courts that have addressed the issue have found that this activity is not similarly protected under CFEPA. *See Sheehy v. Big Y Foods Inc.*, X06CV126014260S, 2012 WL 5860317 (Conn. Super. Ct. Oct. 31, 2012) ("this court cannot interpret the plaintiff's request for reasonable accommodation for his disabilities or, for that matter, his association with his disabled son, as acts in opposition to unlawful employment practices by the defendants."); *Dwyer v. Waterfront Enters., Inc.*, CV126032894S, 2013 WL 2947907, at *11 (Conn. Super. Ct. May 24, 2013) ("The few Connecticut courts that have considered the issue have concluded that § 46a-60(a)(4) does not protect an employee who makes a request for a reasonable accommodation.").

**All of the cases cited by the defendant as support for its position are distinguishable from the case here. For example, in *Setkoski v. Univ. of Conn. Health Center*, the plaintiff, suffering from anemia, was required to take medical leave for surgery and treatment. No. HHDCV106012794, 2012 WL 2044802, at \*1 (Conn. Super. Ct. May 10, 2012). The complaint alleged that "[u]pon her return [in July 2008], the plaintiff was met with hostility and was denied work and access to her work computer and email. . . . [Later,] the plaintiff was presented with a demand to leave the department and an offer of temporary reassignment to another department until September 15, 2008, at which time her employment would end. The plaintiff refused the offer and was subsequently terminated." *Id.* The court found that the complaint, which alleged that the plaintiff was retaliated against because she took leave, was not "an opposition to an unlawful employment practice and is not a protected activity" under CFEPA. *Id.* at \*4. As is apparent from the opinion, the claim for retaliation stemmed not from the plaintiff's opposition to the demand for transfer, but from her initial taking leave. Importantly, there were no allegations in that case that the plaintiff opposed the transfer demand; the court stated that she just refused to take the reassignment. There were no allegations that she complained to her managers about what she viewed as illegal conduct or even that she protested when she was told that her employment would end in September. All of the other cited cases present similar facts, namely that the employees requested accommodations, but took no contrary action once those accommodations were denied.**

**Unlike the cases cited by the defendant, Payne did not just ask for reasonable accommodations, he protested and "opposed" Button's decision not to provide such accommodations, as Button was required to do by law. Even though Payne could have capitulated after arguing with Button, the plaintiff refused and continued to oppose Button's actions by seeking audiences with Button's superiors. Even assuming that the heightened standard applied by the few Connecticut superior courts cited by the defendant is correct, the allegations in the Amended Complaint show that the plaintiff sufficiently "opposed" management's denial of providing accommodations to have been engaged in "protected activity" under CFEPA. The allegations here are much different than just asking for accommodations and then being fired without any discussion of "opposing" conduct.**

**Moreover, the defendant has not provided, and this Court has not found, any binding opinions from the Connecticut appellate courts on this issue. Given the lack of binding authority in Connecticut, the firmly established law that requesting accommodations is protected activity under the ADA, the manner in which these cases are analyzed by this district court, and, in the alternative, the clear and pivotal factual distinctions between this case and the Connecticut cases cited by the defendant as authority, this Court finds that the plaintiff's actions were sufficient to be considered "protected activity" under CFEPA.**

**Conclusion**

Based upon the above reasoning, Defendant's [Dkt. #19] motion to dismiss is DENIED.

                              IT IS SO ORDERED.


                              _____/s/_____
                              Hon. Vanessa L. Bryant
                              United States District Judge


Dated at Hartford, Connecticut: December 30, 2013