## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALLEN PAYNE,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:13-CV-00355 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **PSC INDUSTRIAL OUTSOURCING,** | : | |
| **LIMITED PARTNERSHIP,** | : | |
| **Defendants.** | : | **September 30, 2015** |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. #42]

### I.      Introduction

The plaintiff, Allen Payne ("Payne"), brings this action against PSC Industrial Outsourcing, Limited Partnership ("PSC"), for disability discrimination in violation of Conn. Gen. Stat. § 46a-60(a)(1), violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and retaliation and hostile work environment in violation of Conn. Gen. § 46a-60(a)(4), for actions taken in relation to his termination following disclosure of a cardiac condition.  Currently pending before the Court is the Defendant's Motion for Summary Judgment.  For the reasons that follow, the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### II.      Factual Background

The following facts relevant to the Defendant's Motion for Summary Judgment are undisputed unless otherwise noted.

1

The Plaintiff, Allen Payne, a resident of Waterbury, Connecticut, began working for Defendant PSC on or about January 21, 2002 as a Technician/Laborer.  [Dkt. 42-1, Def.'s 56(a)1 Stmt. ¶ 13].  Plaintiff was later promoted to the position of Coordinating Supervisor.  [Id. ¶14].  PSC, a Delaware corporation with its principle place of business in Houston, Texas, provides services to power plant facilities that include the erecting and dismantling of scaffolding at plants where maintenance or cleaning is necessary.  [Id. ¶1].  PSC's scaffolding crews are responsible for erecting and dismantling the temporary scaffolding structures – which can be several stories high – that hold people and materials necessary for maintenance work.  [Id. ¶¶ 2,3].  The parties agree that scaffolding work is "strenuous, labor intensive, dangerous, and is completed in extreme conditions."  [Id. ¶12].  Although some PSC locations had a wench or elevator with which materials and men could be carried up without the use of stairs, the wenches and elevators were not always operational at all locations. [Id. ¶¶ 4,5].  However, the parties dispute the extent to which a necessary component of scaffolding work involves the carrying of construction materials via stairs from the ground to the top of the scaffold.  [Dkt. 43-2, Pl.'s 56(a)1 Stmt. ¶ 4].

In or around 2007-2008, Plaintiff was diagnosed with testicular cancer and was placed on medical leave from his employment at PSC for approximately one year while he underwent treatment.  [Dkt. 42-1, Def.'s 56(a)1 Stmt. ¶ 15].  During his treatment for testicular cancer, Plaintiff developed a cardiac condition and suffered a heart attack.  [Id. ¶16].  Upon his return to work in 2009, Plaintiff was

assigned to work as a Foreman at the PSC job site in New Haven, Connecticut. [Id. ¶¶ 17,18]. After PSC lost its contract for the New Haven job site, Plaintiff was transferred back to the PSC job site in Bridgeport, where he was assigned to assist in assembling and disassembling scaffolding. [Id. ¶20].

Plaintiff alleges that he informed the Location Manager at Bridgeport, Richard Woodhall ("Woodhall"), that his heart condition prevented him from engaging in excessive stair climbing and that Woodhall assured him that PSC would accommodate him. [Dkt. 42-5, Payne Dep. Ex. B, at 60]. Plaintiff alleges that his direct supervisor, Travis Button ("Button"), also agreed to accommodate him and assigned him to "ground work" or to tasks that did not involve the climbing of stairs. [Id. at 65]. Such "ground work would involve bringing materials to the location where the scaffold would be erected and either attaching the materials to ropes or pulleys, if available, or passing the materials to the workers erecting the scaffolding. [Dkt. 42-1, Def.'s 56(a)1 Stmt. ¶ 25-27]. Plaintiff was also able to use a wench or elevator, if one was available to ferry materials to the top of the scaffold. [Id.]. Finally, Plaintiff would also assume Button's supervisory and managerial functions when Button was absent from work. [Id. ¶¶ 29, 30]. For two years, the parties agree that Plaintiff was able to continue working for PSC on its scaffolding crews without incident, despite the limitations of his heart condition. [Dkt. 42-2, Def.'s Mem. at 28; Dkt. 43-1, Pl.'s Opp. at 18].

In May of 2011, while Button was out of the office, Plaintiff alleges that he discovered paperwork indicating that there were individuals on the payroll who were not working at the PSC site. [Dkt. 42-5, Payne Dep. Ex. B, at 77-78.]. Plaintiff

**3**

described the individuals as "ghost employees" and alleges that one such individual was Button's brother.  [Id. at 78]. Plaintiff claims that he called Button to question him about the paperwork and to express disapproval with the practice of paying "ghost employees," and that Button responded that if Plaintiff got involved, he would "not be working."  [Id. at 80].

According to the Plaintiff, it was after this conversation that Button's "whole demeanor" began to change.  [Id. at 81.].  Plaintiff claims that Button began to harass him about his inability to climb stairs, making comments such as, "[y]ou have a bad heart old man, I'll send you home," "[y]ou can't walk from here to around the block without falling out," and "[y]ou can't be here that much, you're not going to be around that much longer anyway because of your heart condition you will probably be dead in a few years or a few months."  [Id. at 84]. Plaintiff claims that Button began making these comments toward him on a daily basis.  [Id. at 86].  Plaintiff also alleges that Button began asking him to perform tasks involving numerous flights of stairs; when Plaintiff told Button he could not perform these tasks, Mr. Button told him he could go home.  [Id. at 98].

At his deposition, Plaintiff recalled three incidents where he was sent home for being unable to perform tasks that involved climbing stairs.  [Id. at 85].  During two of these instances, Plaintiff claims that was instructed to carry materials up stairs, rather than use ropes or pulleys to hoist them.  [Id. at 87-92].  On the second occasion, workers were using a pulley and a crane to hoist the larger materials, but smaller materials, such as "jacks or wooden blocks" were carried up manually.  [Id. at 93-97].  No elevator or wench was operational at the time.  [Id.

4

at 93-94].  Plaintiff alleges that every time he was sent home he expressed to Woodhall his concern and dislike at being sent home and that he felt he was being harassed by Button.  [Id. at 99-105].

On July 26, 2011, Plaintiff claims he was at a job site for which no elevator or wench was operational, working from the ground attaching pipes to a rope for the other workers on top of the scaffold to hoist up.  [Id. at 88-89].  He alleges that Button told him he needed him to go up to the top floor and carry the materials up the stairs.  [Id.].  When Plaintiff told Button he could not carry the materials up the stairs, he was told to go home.  [Id. at 89].  In response, Plaintiff accused Button of harassing and abusive behavior; Button and Plaintiff then continued to argue and Button eventually told Plaintiff, "Go home. You're threatening me."  [Id. at 131].  Plaintiff claims that Button began yelling, but also admitted it was "possible" that Plaintiff raised his voice to Button as well.  [Id. at 174-175].

Defendant claims that Woodhall subsequently conducted an investigation and spoke to Plaintiff's co-workers who had been present during the verbal altercation, and that the co-workers "confirmed" that Plaintiff had acted inappropriately toward Button.  [Dkt. 42-4, Woodhall Decl. Ex. A at ¶ 16].  The next day, on July 27, 2011, Plaintiff, Woodhall, Button, and Mike Sanchez, another supervisor, met to discuss the incident from the previous day.  [Id. at ¶17; Amended Compl. at ¶ 53].  At this meeting, Woodhall asked Plaintiff to sign a write-up for insubordination and threatening a supervisor, but Plaintiff refused to do so.  [Dkt. 42-4, Ex. A at ¶ 19; Dkt. 42-9, Ex. F (Disciplinary Warning); Amended Compl. at ¶ 53].  When Woodhall asked both men what happened, Plaintiff admits

5

that he became irate when Button began telling his side of the story.  [Dkt. 42-1 ¶ 78].  Plaintiff then began yelling, "That's a fucking lie" and "You're just picking on me because you know I have proof about ghost employees."  [Id. ¶ 79].  Plaintiff made a statement about how Woodhall and Button needed to "handle" the situation, which both men perceived as a threat.  [Dkt. 42-4, Ex. A at ¶ 20; Dkt. 42-5, Ex. B, at 145-146].  After the July 27 meeting, Plaintiff was placed on an administrative leave of absence.  [Dkt. 42-4, Ex. A at ¶ 24].

On August 2, 2011, a meeting took place between Plaintiff, Area Manager Chris Egger ("Egger"), and Woodhall.  [Dkt. 42-1 ¶ 85].  Plaintiff alleges that he attempted to show Egger the documentation he had about the "ghost people," but Egger did not want to see it.  [Dkt. 42-5, Ex. B, at 164]. They discussed Plaintiff's conduct at the meeting and the statement made by Plaintiff that Mr. Button and Mr. Woodhall perceived as a threat.  [Id. at 162].  Defendant claims that at this point Plaintiff became agitated and raised his voice, then stood up, leaving Egger feeling threatened.  [Ex. H at ¶¶ 10-12].  Egger then informed Plaintiff he was being terminated for threatening a supervisor, before ending the meeting.  [Id.].  Plaintiff alleges Mr. Egger told him, "You don't trust Travis Button, you don't trust Mr. Woodhall, you don't need to be here, your employment is terminated."  [Dkt. 42-5, Ex. B, at 163].  Following his termination, Plaintiff contacted Defendant's human resources department and stated "[h]ow could you terminate me when I have information on whistleblowers, on conduct pertaining to whistle blowers?"  [Id. at 164-165].

6

Defendant subsequently filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on September 15, 2011, alleging that he had been discriminated against on the basis of his physical disability.  [Dkt. 42-7, Ex. D].  He received a release of jurisdiction letter from the CHRO on November 28, 2012.  [Dkt. 20-1, Amended Compl. Ex. A].  Plaintiff subsequently filed this action against PSC in the Connecticut Superior Court on February 20, 2013, and Defendant removed the case to this Court on March 14, 2013, citing 13 U.S.C. §  1331 and 13 U.S.C. § 1332(a)(1).

The plaintiff filed an Amended Complaint in response to the defendant's motion to dismiss, alleging violations of the Connecticut Fair Employment Practices Act ("CFEPA"), on the basis of both disability discrimination, failure to accommodate, retaliation and hostile work environment, and violations of the Americans with Disabilities Act ("ADA") on the basis of disability discrimination and failure to accommodate.

Defendant has moved for summary judgment on all counts, arguing that it provided reasonable accommodation wherever such accommodation was available, that plaintiff has failed to state a prima facie claim for discrimination because he believes he was terminated due to his claims regarding "ghost employees," that Plaintiff was terminated for the legitimate, non-discriminatory reason that he had threatened his supervisors, and that Plaintiff has offered no evidence that this reasoning is pretextual.

III.   **Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon

which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

IV.    <u>Discussion</u>

i.    Discrimination Based on Failure to Accommodate Under CFEPA (Count One) the ADA (Count Two)

"Connecticut courts generally analyze ADA and CFEPA claims under the same standard."  *Willoughby v. Conn. Container Corp.*, 11-cv-00992(CSH), 2013 WL 6198210, at \*16 (D. Conn. Nov. 27, 2013) (citations and internal quotation marks omitted).  Accordingly, the Connecticut Supreme Court has noted that Connecticut state courts will "look to federal law for guidance on interpreting state employment discrimination law," as "the analysis is the same under both."  *Craine v. Trinity College*, 259 Conn. 625, 637 n.6 (Conn. 2002).

A plaintiff presents a prima facie case of disability discrimination arising from a failure to accommodate under the ADA by alleging: "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96-7 (2d Cir. 2009) (internal quotation marks and citations omitted).  The parties do not dispute that Plaintiff has a

9

disability within the meaning of the ADA, or that PSC is a covered employer. Defendant argues, however, that there were no reasonable accommodations that could have been made to allow Plaintiff "to perform his duties within the limitations of his restrictions, when the only jobs available involved climbing stairs." [Def.'s Mem. At 22].

The ADA defines "reasonable accommodation" as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *see also Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 217 (2d Cir.2001). These same duties are implicitly imposed on employers under the CFEPA. *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 403-404, 944 A.2d 925 (2008).

The Plaintiff bears both the burden of production and the burden of persuasion as to the existence of some accommodation that could have been made to allow him to do his job. *McBride*, 583 F.3d at 97; *see Turner v. East Conn. Reg'l Ed. Serv.*, No. 3:12cv00788, 2013 WL 6230092, at *8, 10 (D. Conn. 2013). Defendant argues that Plaintiff has failed to meet this burden because he has failed to identify a reasonable accommodation that could have allowed him to perform the work "on the three days he was sent home." [Def.'s Mem. At 22]. This argument is both a misconstruction of the law and unsupported by the Record.

To defeat a defendant/employer's motion for summary judgment, a plaintiff/employee "need only show that an 'accommodation' seems reasonable on its face, *i.e.,* ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S. Ct. 1516, 1523, 152 L. Ed. 2d 589 (2002); *see also McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir.2013) (holding that at summary judgment, drawing all inferences in Plaintiff's favor, "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."). The burden thereafter rests with the defendant/employer to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Barnett*, 535 U.S. at 402; *McMillan*, 711 F.3d at 128 ("[a]n "undue hardship" is "an action requiring significant difficulty or expense"), *citing* 42 U.S.C. § 12111(10)(A). This burden shift reflects the reality that "an employer can more frequently and easily prove the presence of business hardship than an employee can prove its absence. " *Barnett*, 535 U.S. 391 at 400.

On its face, the claim of a plaintiff with a heart condition rendering him unable to ascend vertically seeking accommodation for a job involving the construction and dismantling of vertical scaffolding raises obvious questions as to the plaintiff's ability to perform the work. However, the evidence on the Record precludes a finding that, as a matter of law, Plaintiff has failed to identify reasonable accommodations that would allow him to perform the essential functions of the job. Plaintiff here was employed on a scaffolding crew by the Defendant for two years after disclosure of his disability. During this time,

Defendant admits that Plaintiff "was accommodated when he told PSC that he needed to avoid climbing stairs."  [Def.'s Mem. At 21].  Such accommodations included assigning Plaintiff to 'ground work,' the use of pulleys or ropes, and, when operational, the use of a wench or elevator.   Neither party alleges that Plaintiff, at any point during this two year period, was required to go home due to lack of available work not involving the climbing of stairs.  These two incident-free years raise a strong inference that reasonable accommodations were available both generally, and available specifically on the days Plaintiff was sent home.  In addition, Plaintiff testified, that on the third occasion he was sent home, workers were hoisting materials to the top of the scaffold using a rope and pulley, and that he was assisting with 'ground work.'  Plaintiff also testified that Defendant's instruction to use the stairs was "by choice" and not made out of necessity.  The Court finds that Plaintiff here has met his initial burden of showing that reasonable accommodations existed, with which Plaintiff was able to perform the essential functions of the job.

Defendant's motion for summary judgment does not allege that the accommodations identified by Plaintiff would have caused it undue hardship, nor has Defendant offered facts on the record demonstrating the impracticability of tasking Plaintiff with ground work or reassigning him to a work site with an operating wench or elevator.  If a business hardship existed due to circumstances which made it necessary for Defendant to send Plaintiff home on three occasions, the burden rests with Defendant to convince a trier of fact of the existence and import of those circumstances.

At this stage, a dispute of material fact exists as to whether it was necessary for Defendant to send the Plaintiff home on three occasions between May and August of 2011.  Again, the two incident-free years of employment prior to these three days raise a strong inference that alone may be enough for a reasonable finder of fact to conclude that such accommodations were available and would not have caused undue hardship.

Plaintiff has therefore raised a genuine issue of fact as to whether Defendant failed to provide reasonable accommodations that would have allowed Plaintiff to perform the essential functions of his job.  Summary judgment as to Plaintiff's reasonable accommodation claim is therefore DENIED.


ii.   Discrimination Based on Adverse Employment Action Under CFEPA (Count One) and the ADA (Count Two)

Title I of the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard[s] to" any employment decision.  42 U.S.C. § 12112(a).  A claim brought under the ADA follows the familiar burden-shifting framework of Title VII cases: "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir.2009) (*quoting Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006)).

### a.    Prima Facie Case

To establish a prima facie case of discrimination arising from adverse employment action under the ADA, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." B*rady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).  Again, the defendants do not allege that they are not subject to the ADA, or that Plaintiff is not disabled, so those elements are conceded.  And, as discussed above, Plaintiff has made a sufficient showing at this stage that reasonable accommodations existed which allowed him to perform the essential functions of the job.  Thus, the only issue is whether plaintiff's termination arose because of his disability.

It is "an open question" in this Circuit whether, following the Supreme Court's holdings in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ⸺ U.S. ⸺⸺, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013), plaintiffs asserting discrimination in violation of the ADA must meet a "but-for" causation standard or merely a "motivating factor" standard of causation.  *See DeAngelo v. Yellowbook Inc.*, No. 3:12-CV-520 (VLB), 2015 WL 1915641, at *7 (D. Conn. Apr. 27, 2015).  However, even under the higher "but for" standard, Plaintiff has offered sufficient evidence to establish a prima facie case.

The thrust of Defendant's argument in support of its Motion for Summary Judgment is that Plaintiff cannot simultaneously prove that Defendants discriminated against Plaintiff because of his disability while offering testimony indicating that Plaintiff believed that his knowledge of alleged "ghost employees" was the 'real' reason Defendants sought to alter the conditions of, and ultimately terminate, his employment.  Specifically, when Plaintiff was asked if he would have been terminated had he not confronted Button about "ghost employees," he responded that he would not have been terminated.   [Dkt. 42-5, Ex. B, at 183].  In addition, immediately following his termination, Plaintiff contacted Defendant's human resources department and stated "[h]ow could you terminate me when I have information on whistleblowers, on conduct pertaining to whistle blowers?" [Dkt. 42-5, Ex. B, at 164-165]

While the Defendant is certainly entitled to present this argument to a finder of fact as evidence relating to Plaintiff's credibility, it does not support summary judgment where, as here, a reasonable trier of fact could still conclude that discrimination was a but for cause of the adverse employment actions alleged.  *See Desia v. GE Life & Annuity Assur. Co.*, No. 3:05 CV 1395 (MRK), 2008 WL 4724080, at *6 (D.Conn. Oct. 24, 2008) ("On a motion for summary judgment, district courts simply may not make credibility determinations").  Specifically, Plaintiff has offered evidence that Defendant's employees targeted and ridiculed the Plaintiff because of his disability and removed previously-provided accommodations so as to make his employment, after two years without incident, suddenly physically inaccessible.  The fact that the discriminatory conduct only

began after the dispute over "ghost employees" arose does not preclude a finding that Plaintiff's disability could be a "but for" cause of his termination.  The immediate chain of events leading to Plaintiff's termination began with several demands that Plaintiff perform a task that he had already informed his superiors he was unable to safely undertake because of his disability.  Absent these repeated demands, there is no evidence on the Record that Plaintiff's employment could not have continued successfully as it had the two years prior, despite the "ghost employees" argument.  A reasonable finder of fact could conclude that the dispute over "ghost employees" was merely a catalyst for discriminatory conduct that was a "but for" cause of Plaintiff's termination.

Because there is a genuine dispute of material fact whether Plaintiff was terminated on the basis of his disability, plaintiff has made a sufficient showing as to the *prima facie* case of disability discrimination.

### b.    *PSC's Legitimate, Non-Discriminatory Reason for Plaintiff's Termination*

Defendant argues that "Plaintiff was fired for making a threat toward Mr. Button and for no other reason."  [Def.'s Mem. At 18-19].  Plaintiff argues that "making a threat against a co-worker is a legitimate, non-discriminatory reason for an employee's termination."  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (legitimate, nondiscriminatory reason for an employee's termination existed based on threatening behavior).  Plaintiff acknowledges that a threat can constitute a legitimate, nondiscriminatory reason for terminating an

employee.  Therefore the Court finds that Defendant has met its burden of proffering a non-discriminatory purpose.

### c.  Plaintiff's Evidence that PSC's Proffered Reason for Terminating His Employment is Pretext for Discrimination

With the Defendant having proffered a legitimate, non-discriminatory purpose, the "ultimate burden then rests on the plaintiff to persuade the fact finder that the employer's proffered explanation is merely a pretext for its intentional discrimination."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998).  Plaintiff argues that Button may have "concocted the threat allegation either in furtherance of his ultimate objective of removing the Plaintiff from his employment . . . or in an attempt to prejudice Woodhall, Egger, and/or other agents of the Defendant . . . ."  [Pl.'s Opp. at 14].  Plaintiff also suggests that "perhaps . . . Woodhall was 'in cahoots' with Button."  [Id. at 15].

Putting aside Plaintiff's speculation and guesswork regarding the possible motivations of his immediate supervisors, "[a]n employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 130, 137 (2d Cir. 2005).  Here, the fact that Plaintiff's employment was terminated by Egger, a higher-level regional supervisor, fatally undermines Plaintiff's claims of pretext. Plaintiff does not make a single allegation concerning Egger's motives, let alone allege that Egger was motivated by a discriminatory animus.  In fact, Plaintiff fails to allege that even Woodhall was motivated by discriminatory animus, arguing

instead that Woodhall's motive to conspire with Button would have been driven by concern "about [Woodhall's] superiors being informed that he failed to do his job as Button's superior."  [Pl.'s Opp. at 15].

However, to make a sufficient showing that a Defendant's proffered explanation is pretextual, a plaintiff must rely upon more than speculation.  *See, e.g., Trent v. Town of Brookhaven*, 966 F. Supp. 2d 196, 205 (E.D.N.Y. 2013) (inadmissible evidence such as speculation is insufficient to demonstrate pretext).  Beyond mere speculation, there is no evidence to suggest that Woodhall ever had a motive to fabricate an incident of insubordation involving Plaintiff.  Nor is there evidence that Woodhall's investigation of the dispute between Plaintiff and Button was falsified, or that Woodhall's report that Plaintiff's co-workers confirmed that Plaintiff's behavior was insubordinate was falsified.  Therefore, there is no evidence upon which a reasonable trier of fact could infer that Egger was led to terminate Plaintiff for pretextual reasons by any Woodhall-Button conspiracy to cover-up intentional discrimination.

There is, however some evidence on the Record which entirely supports the Defendant's proffered reasoning.  Plaintiff has admitted to raising his voice in a meeting with Button and Woodhall and has admitted that he refused to sign a disciplinary warning for insubordination.  Plaintiff has also admitted that he repeatedly raised the issue of "ghost employees" in meetings with his superiors that were held to discuss Plaintiff's behavior, demanding that they "handle the situation," a comment that can be objectively seen as threatening and wholly inappropriate.

In sum, Plaintiff has failed to produce evidence from which a reasonable jury could conclude that Defendant's proffered explanation for Plaintiff's termination was pretextual and that the explanation was pretext for intentional discrimination on the basis of Plaintiff's disability.  Summary judgment as to Plaintiff's discrimination claim is therefore GRANTED.

iii.    Retaliation Under CFEPA (Count Three)

Plaintiff's CFEPA Retaliation claim is evaluated under the same burden-shifting analysis as under the ADA, and for a *prima facie* case, the plaintiff must show, "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

"Under Connecticut law, a person who has opposed any discriminatory employment practice . . . has participated in a protected activity."  *Obinabo v. Radio Shack Corp.*, 3:09-cv-1772(MRK), 2012 WL 1565113, at *6 (D. Conn. 2012). "In addition to protecting the filing of formal charges of discrimination . . . [the] opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management . . . ." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990);  *see also Hoydic v. Genesco, Inc.*, AANCV075003291S, 2008 WL 1914338, at *5 (Conn. Super. Ct. Apr. 10, 2008) (construing the same for Conn. Gen. Stat. § 46a-60(a)(4)).

Once again, the Second Circuit has queried "whether a retaliation claim under…CFEPA should be governed by a 'motivating factor' standard rather than a 'but for' causation standard." *See Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.*, 2014 WL 4958166, at *5 n.3 (2d Cir.2014). However, under either standard, Plaintiff has set forth sufficient evidence to support a *prima facie* case for retaliation under CFEPA.

Defendant argues that no causal connection can be made between "his request for accommodation in August 2009 and his termination from employment on August 2, 2011." Defendant notes that the timing between a protected activity and an alleged retaliatory action can only support an inference of retaliation "if the gap in time is very close." *Bucalo v. Shelter Isl. Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012)]. However, Plaintiff has alleged that he complained repeatedly to Woodhall about his treatment by Button between May and August of 2011, that Woodhall did not intervene or remedy the situation and that Woodhall took part in the meetings leading to his termination at the end of July, 2011. Thus, the timing could support an inference of retaliation.

However, there are no other facts from which a reasonable trier of fact could infer that Plaintiff was terminated because of the complaints Plaintiff lodged with Woodhall. Even if Plaintiff had offered facts, beyond the mere inference of the timing involved, establishing a causal connection between Plaintiff's complaints and his termination, there is no evidence from which a reasonable trier of fact could find that Defendant's proffered explanation for Plaintiff's termination was pretextual. Again, Plaintiff failed to allege that

Plaintiff's complaints to Woodhall somehow motivated Woodhall to fabricate or embellish either the incident of insubordation, the subsequent investigation, or the report and disciplinary warning.

Summary judgment as to Plaintiff's retaliation claim is therefore GRANTED.

iv.     Hostile Work Environment Under CFEPA (Count Three)

A hostile work environment claim under CFEPA is examined under the same standards as those governing a hostile work environment claim under Title VII. *Brittell v. Dep't of Correction*, 247 Conn. 148, 165–168 (1998). To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012). "A plaintiff must demonstrate that the incidents were either 'sufficiently continuous and concerted to be considered pervasive, or that a single episode is severe enough to establish a hostile working environment.'" *Miller v. Ethan Allen*, 2012 WL 1899378, at *7, 2012 U.S. Dist. LEXIS 72572, at *20 (*quoting Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999)). "Isolated, minor acts or occasional episodes do not warrant relief." *Miller*, 2012 WL 1899378, at *7, 2012 U.S. Dist. LEXIS 72572, at *21 (*quoting Brennan*, 192 F.3d at 318).

Plaintiff has testified that his supervisor repeatedly harassed him because of his disability and that he was repeatedly ordered to undertake tasks which he could not safely undertake physically because of his disability.  This alleged conduct was extreme enough that a reasonable employee would find "the conditions of [his] employment altered for the worse."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).  As such, a reasonable trier of fact could conclude that Plaintiff was subjected to a hostile work environment. Summary judgment as to Plaintiff's hostile work environment claim is therefore DENIED.

V.    <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART as to Plaintiff's claims for discrimination under the ADA and retaliation under CFEPA and DENIED IN PART as to Plaintiff's claims for reasonable accommodation under the ADA and hostile work environment under CFEPA.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 30, 2015